## The SCHOOL DIRECTORS *v.* DUNKLEBERGER.

If land previously appropriated by the owner to a charitable purpose, without convey-
ance, be, subsequently, by mistake, conveyed to another, the grantee thereby becomes
a trustee for those who are beneficially interested in the charity.

If such trustee disturb and oust the *cestui que trust* from his possession, an ejectment
will lie to recover it back, at the suit of the *cestui que trust*, or those who stand in the
same relation to the trust estate.

ERROR to the Common Pleas of Perry county.

This was an action of ejectment by the School Directors of Ty-
rone township *v.* David Dunkleberger, to recover a school-house and
about half an acre of ground.

Five German congregations owned a farm; and in 1835, the in-
habitants in its neighbourhood were desirous to build a school-
house; and the five congregations, through the medium of their
pastor, without any formal meeting of their vestry, but individually,
assented and agreed, that about half an acre of their farm should
be appropriated to that purpose. There was no meeting on the
subject. The house was built by private contributions of money
and labour, and occupied for about a year for the purpose for
which it was built. When the general school law went into opera-
tion, the school-house, without any formal ceremony, "*nemine
contradicente*," came into the possession of the school directors
of Tyrone township, who continued to use and occupy it until 1845.
In 1841 the five congregations exposed the farm to public sale up-
on written terms, one of which was, "The school-house on said
place is excepted," and the land was struck down to David Dunkle-
berger. The title-papers were put into the hands of a scrivener to
prepare a deed, which, with the possession, was to be delivered on
the first of April, 1842. At this time, when the contract was about
to be executed, the deed was read and contained a reservation of a
water-right which belonged to a neighbouring tract of land, but did
not contain any reservation of the school-house, but described the
whole original tract by metes and bounds. Dunkleberger then re-
fused to accept the deed, on the ground that he knew nothing of
the reserved water-right, and he would not pay his money, adding,
at the same time, that he did buy subject to the reservation of the
school-house, and that he knew was right. The parties then sepa-
rated, and in a few days met again, and after some cavil on the
subject, the vendors threatened to sue him, and Dunkleberger ac-
cepted the deed as it had been originally prepared. In 1845,

c 2

Dunkleberger, in the absence of the school directors and teacher, took possession of the school-house and fastened up the doors and windows, and kept the plaintiffs out. This ejectment was then brought to recover it back.

The plaintiffs requested the court to charge the jury on the following point:

If the jury believe that the lot of ground in controversy was appropriated by the congregations who owned the tract of land of which it was a part in 1835, and a school-room was built thereon by a subscription made in the neighbourhood; and the lot was fenced off the tract of land, and around the school-house at the time. That in March, 1836, when the public school law came into operation, the school directors of the township came into possession of the said school-house and lot, and continued to occupy, use, and improve it for all the purposes of a public school until March, 1845. That Daniel Dunkleberger lived in that neighbourhood, and had full knowledge of these facts. That on the 3d day of October, 1841, when the tract of land of the said congregations was offered for sale at public vendue, it was expressly mentioned in the conditions of sale, that the school-house was excepted; that the same was spoken of and understood between the said David Dunkleberger and the trustees who sold the same; that the said school-house and lot were excepted out of the sale to him; that after the sale he acknowledged the same had been excepted. That, after the sale to him, the school directors continued to occupy and possess the same as usual, until they were ousted by the said David Dunkleberger, in March, 1845. That the plaintiffs are entitled to recover, notwithstanding the reservation was not made in the deed to Dunkleberger, and that the conveyance of the legal estate to him by the trustees created a resulting trust in favour of the plaintiffs.

Upon which the court charged the jury as follows:

The plaintiffs have not made out a case entitling them to your verdict. The defendant's deed embraces the land in dispute; and after the altercations between the parties subsequent to the property being struck down to him, that paper (the deed) must be regarded as the consummation of their agreement upon this subject.

The plaintiffs have also failed to show title in themselves. This house was never held by trustees for the benefit of the neighbourhood, nor has any transfer of right been shown to the plaintiffs; the defendant is therefore entitled to your verdict.

*Watts*, for plaintiff in error, argued that the court had misap-

prehended the whole law of the case. Their instruction to the jury was, that, in contemplation of law, the conveyance of the school-house, or the reservation of it by the vendor to the vendee, was the subject of negotiation, and that the delivery of the deed was the consummation of their bargain, and conclusive upon their rights. But certainly it cannot be conclusive upon the rights of third persons, who were not parties either to the original contract, or the subsequent negotiation. The vendors had parted with their title by dedicating the land to a public charity; possession had been taken of it, and improvements made, of all which the vendee had notice; it was not competent, therefore, for them either to contract or negotiate upon the subject. The principle was, therefore, misapplied by the court.

There is no principle better settled, than that ejectment may be maintained upon a naked right of possession. Here the inhabitants of the neighbourhood were put into possession of the land, which had been dedicated to a charity. The object of this charity was but systematized by the school law of 1836, and the directors of each township created into a quasi corporation; and, by the provisions of the act, capable of taking and holding real estate: and they being thus quietly in the possession of the property, and forcibly dispossessed by the defendant, who, upon the facts of the case, was the holder of the legal title as a trustee for them, it presented the simple case of a trustee of a legal title ousting his *cestui que trust*, for the remedy of which ejectment will always lie.

*Todd*, contrà, argued that the plaintiffs had no title, and never had any to the land in dispute. It was true, by the school law of 1836, they are capable of taking a conveyance of real estate; but it is not pretended that any conveyance was made to them of this property, either written or parol. But the fact is clear that the defendant, upon being informed that a water-right was reserved in the deed to him, and that the school-house was not reserved, refused to accept it; and that further negotiation was had between the parties, which resulted in his paying his money, and taking the conveyance of the entire property, including the school-house. Now how can it be said that he thereby became a trustee for the present plaintiffs? It requires no authority to show that all negotiations, including the written contract itself for the sale of land, is consummated by the deed.

*June* 8. PER CURIAM.—The legal title is sufficient to entitle a trustee to possession of the trust property against a wrongdoer;

and the question is, were the school directors wrongdoers? The congregations who owned the glebe, dedicated that part of it in contest to public use for the purposes of a school-house, which was subsequently built by the inhabitants of the neighbourhood. It was used as such for a time, under the voluntary system; but when the school law went into operation, it began to be used by the school directors, who held it till the defendant, who had in the mean time purchased the glebe, turned the teacher and scholars out of doors, and locked up the house. But did not the persons found by him in possession answer the description of those for whom the charity was created? The ground was dedicated to public use, to accommodate the people of the neighbourhood with a school; but whether under the one system or the other, was not said, nor is it material: it is enough that it answered the end designated under either. The neighbours, who were really the parties concerned, did not object to the occupancy of the directors; and it did not lie with the defendant, who was no more than the depository of the legal title, to object. Taking it for granted, then, that he was such, still he committed a trespass on the actual occupants, and he must restore the possession to them.

Judgment reversed and a <em>venire de novo</em> awarded.